NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**GEORGE GWYNN,**
*Petitioner*

**v.**

**DEPARTMENT OF THE TREASURY,**
*Respondent*

---

2023-1845

---

Petition for review of the Merit Systems Protection Board in No. DC-0432-16-0865-I-1.

---

Decided:  December 7, 2023

---

GEORGE GWYNN, Alexandria, VA, pro se.

BRENDAN DAVID JORDAN, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent.  Also represented by BRIAN M. BOYNTON, PATRICIA M. MCCARTHY, CORINNE ANNE NIOSI.

---

Before MOORE, *Chief Judge*, DYK and STOLL, *Circuit Judges*.

PER CURIAM.

Petitioner George Gwynn seeks review of a decision of the Merit Systems Protection Board ("Board"). That decision sustained the Department of the Treasury's ("Treasury's") reduction of Mr. Gwynn's grade from Supervisory Individual Taxpayer Advisory Specialist ("ITAS"), IR-0501-5, to Senior ITAS, GS-501-11, on the basis of sustained unacceptable performance. On review in this court, Mr. Gwynn argues primarily that the reasons and examples given in his proposed grade reduction were never substantiated. We find that the Board's findings were supported by substantial evidence and *affirm*.

## BACKGROUND

Mr. Gwynn was a Supervisory ITAS from about 2006 until his demotion in 2016, and his responsibilities included running the daily operations of Taxpayer Assistance Centers in Fredericksburg and Bailey's Crossroads, Virginia. On May 20, 2014, Mr. Gwynn's supervisor sent him a counseling letter informing him that his management ability was lacking and recommending either a change in his management practices or a return to a Senior ITAS role. Over the next year, Mr. Gwynn's supervisor sent seven additional counseling letters and continued to criticize his performance informally. In April 2015, Mr. Gwynn's supervisor issued a poor midyear progress review for the review period beginning October 1, 2014. Then, on April 30, 2015, Mr. Gwynn's supervisor sent him a letter stating that he was required to participate in a performance improvement plan ("PIP"). The letter set forth three critical performance expectations of his position, explained that his performance was unacceptable, and provided specific examples. Mr. Gwynn was given 60 days to demonstrate performance at a minimally successful level. The letter described several necessary performance improvements, listed nine discrete "action items" to complete during the period, and warned Mr. Gwynn that failure to meet

all of the performance standards could result in reduction in grade or reassignment to another position. During this 60-day PIP period, Mr. Gwynn was assigned a manager coach.

The PIP period was interrupted in June 2015, when Mr. Gwynn was hospitalized and underwent emergency surgery. Mr. Gwynn remained on medical leave from June 4, 2015, to November 2, 2015, when he returned to work and gave his supervisor a letter from his doctor stating that Mr. Gwynn was cleared for duty but would need frequent bathroom breaks, standing breaks, and an opportunity to telecommute (especially after clinic appointments). On November 10, 2015, Mr. Gwynn's supervisor told him he could take as many bathroom and standing breaks as needed. However, because Mr. Gwynn was on a PIP, his supervisor determined that he was not eligible to telework under Internal Revenue Service policy. Thus, she instead told Mr. Gwynn to take leave to attend appointments at the clinic whenever he needed. Following a four-week transition period, Mr. Gwynn resumed his full regular duties on November 30, 2015.

Because of Mr. Gwynn's medical leave, his supervisor extended his PIP period to December 31, 2015, and extended the deadlines for specific action items by seven months (from May to December). According to Mr. Gwynn, during his PIP period the Bailey's Crossroads office was understaffed. Between December 11 and 17, 2015, also during Mr. Gwynn's PIP period, the Bailey's Crossroads office moved to Vienna, Virginia.

Following the PIP period, Mr. Gwynn's supervisor recommended removing him from his management position. The supervisor determined that Mr. Gwynn had failed to show adequate performance in each of the three critical performance expectations listed in his PIP notice (leadership and human capital management, customer service and collaboration, and program management). On March

25, 2016, Mr. Gwynn's second-line supervisor proposed a reduction in grade to GS-11, Senior ITAS.  The second-line supervisor gave three reasons for the demotion, which were Mr. Gwynn's inadequate performance as to the three critical performance expectations, and supported each reason with multiple specifications.  On August 19, 2016, Mr. Gwynn's third-line supervisor issued a decision sustaining all of the charges and specifications and effecting the proposed reduction in grade.

Mr. Gwynn appealed his demotion to the Board, contending that the demotion was not supported by the evidence.  The administrative judge ("AJ") found—based on a declaration from Mr. Gwynn's supervisor, Mr. Gwynn's admissions that he failed some requirements of his PIP, a declaration from the deciding official, and other documents—that Mr. Gwynn was properly demoted for poor performance under 5 U.S.C. chapter 43.  Mr. Gwynn petitioned the full Board for review.  The Board denied review, affirmed the demotion, and modified the AJ's findings as to certain examples and specifications.  Mr. Gwynn timely petitioned this court for review.  We have jurisdiction under 28 U.S.C. § 1295(a)(9).[1]

## DISCUSSION

Under 5 U.S.C. § 7703(c), we review actions, findings, or conclusions of an agency for whether they are:

> (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

---

[1]    Mr. Gwynn's petition to the Board presented arguments based on disparate treatment due to medical disability.  Before this court, Mr. Gwynn has certified that he is not raising a discrimination claim.

> (2) obtained without procedures required by law, rule, or regulation having been followed; or
>
> (3) unsupported by substantial evidence.

To demote an employee for unacceptable performance under 5 U.S.C. § 4303, the agency must have (1) established an approved performance appraisal system, (2) communicated the performance standards and critical elements of an employee's position to him, (3) warned him of inadequacies in his performance of critical elements, and (4) offered him counseling and an opportunity for improvement. *Santos v. Nat'l Aeronautics & Space Admin.*, 990 F.3d 1355, 1361–62 (Fed. Cir. 2021) (citing *Lovshin v. Dep't of Navy*, 767 F.2d 826, 834 (Fed. Cir. 1985)). If these so-called "*Lovshin*" requirements are met, the agency may reduce an employee's grade based on an unacceptable rating with respect to even a single critical element of the employee's position. *Harris v. Sec. & Exch. Comm'n*, 972 F.3d 1307, 1316 (Fed. Cir. 2020).

With respect to the first and second *Lovshin* requirements, Mr. Gwynn does not dispute that Treasury had an approved performance appraisal system and that Treasury informed Mr. Gwynn of the performance standards and critical elements of his position.

With respect to the third *Lovshin* requirement, Mr. Gwynn does not appear to dispute that he was warned of inadequacies in his performance of critical elements, which the Board found supported by several communications including the April 2015 midyear review and the April 30, 2015, PIP notice letter. We agree that substantial evidence supports the Board's finding that Mr. Gwynn received warning that his performance was inadequate.

With respect to the fourth *Lovshin* requirement, Mr. Gwynn does not appear to dispute the Board's finding that he was offered coaching, counseling, and more than 60 days

to achieve the tasks set forth in his PIP.  However, Mr. Gwynn argues that Treasury did not offer him a reasonable opportunity for improvement because his PIP period was interrupted by an office move and his illness.  The Board determined that, while the office move and illness were extenuating circumstances, they did not entirely excuse the performance lapses identified by Treasury, several of which occurred before Mr. Gwynn left for medical leave. The Board concluded that Treasury reasonably provided Mr. Gwynn an opportunity to improve his performance, including by providing management coaches, by extending the deadline for certain tasks by seven months, and by extending the PIP period for the full month after Mr. Gwynn resumed his regular duties.  We agree that substantial evidence supports these findings.

On review, Mr. Gwynn primarily contends that the Board erred in determining that his performance was unacceptable and justified imposing a PIP.  He argues that his supervisor gave "misleading and inaccurate statements." Pet. Br. at 29.  Because "credibility determinations of an administrative judge are virtually unreviewable on appeal," we will not disturb the Board's decision to credit evidence provided by Mr. Gwynn's supervisor. *Bieber v. Dep't of the Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002). Substantial evidence supports Treasury's determination that Mr. Gwynn's performance before April 2015 was inadequate with respect to at least one critical element and justified imposing a PIP.  In particular, as to the leadership and human capital management element, substantial evidence supports that Mr. Gwynn failed to complete reviews for all employees in his group during October and December 2014, that Mr. Gwynn worked away from the larger Bailey's Crossroads site without informing his supervisor (despite being instructed to communicate his whereabouts), that Mr. Gwynn failed to sign a disciplinary recommendation for a subordinate who engaged in travel card abuse, and that Mr. Gwynn failed to communicate

promptly with his supervisor after an incident involving two of his employees.

We conclude that substantial evidence also supports the Board's finding that Mr. Gwynn's performance was inadequate with respect to at least one critical element during the PIP period itself.  Substantial evidence supports that Mr. Gwynn failed to prepare a report identifying areas for improvement in his office practices by the deadline set by his supervisor (and that the report he eventually submitted did not identify areas for improvement), failed to have his senior ITAS complete quality reviews during the PIP period, failed to complete assigned progression reviews on each employee during the PIP period, and failed to conduct timely annual appraisals during the PIP period.  Mr. Gwynn's informal brief indeed does not dispute the finding that he did not timely complete several of these requirements.

## AFFIRMED

### COSTS

No costs.